UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEITH BROWN,                                                    REPORT
                                     Plaintiff,                    and
                       v.                                    RECOMMENDATION

CSX TRANSPORTATION, INC.,                          11-CV-00999W(F)
MICHALE LEWANDOWSKI, and
THOMAS FERRIS, JR.,

                                     Defendants.
_____

APPEARANCES:                    HOGAN WILLIG
                                Attorneys for Plaintiff
                                STEVEN M. COHEN, of Counsel
                                2410 North Forest Road
                                Suite 301
                                Getzville, New York  14068

                                NIXON PEABODY LLP
                                Attorneys for Defendants
                                SUSAN C. RONEY, of Counsel
                                40 Fountain Plaza
                                Suite 500
                                Buffalo, New York  14202


## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara[1] on

June 21, 2012, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Defendants' motion for summary judgment (Doc. No. 43), filed January 21, 2014.

---

[1] By Text Order filed January 30, 2015 (Doc. No. 53), this action was reassigned to Honorable Elizabeth A. Wolford.

## BACKGROUND

Plaintiff Keith Brown ("Plaintiff" or "Brown"), who is African-American, commenced this employment discrimination action on November 22, 2011, alleging discrimination on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and New York Executive Law ("NY Exec. Law") § 296 ("§ 296"), against Defendants CSX Transportation, Inc. ("CSXT"), and CSXT Road Foremen of Engines Michael Lewandowski ("Lewandowski"), and Thomas Ferris, Jr. ("Ferris") (together, "Defendants").   In particular, Plaintiff, formerly employed by CSXT as a Conductor, alleges that upon being medically cleared to return to work after an extended medical leave, he was required by Ferris to attend a training program and to pass a test regarding the territory in which Plaintiff worked, and that Lewandowski falsely accused Plaintiff of cheating on the test and of insubordination, which charges led to the termination of Plaintiff's employment with CSXT.  An amended complaint (Doc. No. 7) ("Amended Complaint"), was filed March 21, 2012.  Defendants' answer was filed on May 10, 2012 (Doc. No. 12) ("Answer").

On January 21, 2014, Defendants filed their motion for summary judgment (Doc. No. 43) ("Defendants' Motion"), supported by the attached Declaration of Susan C. Roney, Esq., in Support of Defendants' Motion for Summary Judgment (Doc. No. 43-1) ("Roney Declaration"), attaching exhibits A through M (Docs. Nos. 43-2 through 43-14) ("Defendants' Exh(s). __"),[2] the Affidavit of Linda Mundy in Support of CSXT's Motion for Summary Judgment (Doc. No. 43-15) ("Mundy Affidavit"), attaching exhibits 1

---

[2] Defendants' Exh. F is separately filed under seal as Doc. No. 44.

through 6 (Docs. Nos. 43-16 through 43-21) ("Mundy Exh(s). __"),[3] Defendants'

Statement of Undisputed Facts Pursuant to Local Rule 56 (Doc. No. 43-22)

("Defendants' Statement of Facts"), and the Memorandum of Law in Support of

Defendants' Motion for Summary Judgment Dismissing Amended Complaint (Doc. No.

43-23) ("Defendants' Memorandum").   On March 3, 2014, Plaintiff filed Plaintiff's

Memorandum of Law in Opposition to Defendants' CSX Transportation, Inc., Michael

Lewandowski and Thomas Ferris, Jr. Motion for Summary Judgment (Doc. No. 49)

("Plaintiff's Memorandum"), attaching Plaintiff's Rule 56 Statement of Undisputed Facts

(Doc. No. 49-1) ("Plaintiff's Statement of Facts"), the Statement of Disputed

Facts/Plaintiff's Response to Defendants' Statement of Undisputed Facts (Doc. No. 49-

2) ("Plaintiff's Response to Defendants' Statement of Facts"), the Affidavit of Keith

Brown (Doc. No. 49-3) ("Plaintiff's Affidavit"), and the Affidavit of Richard McVeen (Doc.

No. 49-4) ("McVeen Affidavit").   Plaintiff, in opposition to Defendants' Motion, also filed

on March 3, 2014, the Declaration of Steven M. Cohen, Esq. (Doc. No. 50) ("Cohen

Declaration"), attaching exhibits A through I (Docs. Nos. 50-1 through 50-9) ("Plaintiff's

Exh(s). __").   On March 14, 2014, Defendants filed the Reply Declaration of Susan C.

Roney in Further Support of Defendants' Motion for Summary Judgment (Doc. No. 51)

("Roney Reply Declaration"), attaching exhibits A through F (Docs. Nos. 51-1 through

51-6) ("Defendants' Reply Exh(s). __"),[4] the Declaration of Thomas Ferris in Support of

CSXT's Motion for Summary Judgment (Doc. No. 51-7) ("Ferris Declaration"),

Defendants' Response to Plaintiff Keith Brown's Rule 56 Statement of Undisputed Facts

Pursuant to Rule 56 and Local Rule 56(a)(2) (Doc. No. 51-8) ("Defendants' Reply

---

[3] Mundy Exh. 6 is separately filed under seal as Doc. No. 45.
[4] Defendants' Reply Exh. C is separately filed under seal as Doc. No. 52.

Statement of Facts"), and the Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment (Doc. No. 51-9) ("Defendant's Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED.

## **FACTS**[5]

On September 8, 1998, Plaintiff Keith Brown ("Plaintiff" or "Brown"), an African-American, commenced his railroad employment with Conrail as a conductor.  When Defendant CSX Transportation, Inc. ("CSXT"), an interstate rail-based freight transporter, acquired parts of Conrail in June 1999, Plaintiff became a conductor with CSXT in the Northern Region, Albany Division, with a regular assignment from Buffalo to Selkirk, referred to as "lines east."  As a CSXT conductor, Plaintiff was a member of the United Transportation Union ("UTU" or "the union"), Local 1393.

Plaintiff worked as a conductor on lines east, between Buffalo and Selkirk, New York.  In October 2005, Plaintiff was temporarily dismissed from service following an investigation from which it was determined that Plaintiff was responsible for an accident on September 22, 2005, resulting in sideswipe damage to 12 train cars, derailment, and the overturning of a train car carrying radioactive materials.  Although it was initially decided that Plaintiff's employment would be terminated for the mishap, in March 2006, the initial determination was subsequently mitigated and Plaintiff received a leniency reinstatement.

As a result of injuries sustained in a non-work related automobile accident on August 11, 2007, Plaintiff was disabled from work until May 20, 2009, when Plaintiff was

---

[5] Taken from the pleadings and motion papers filed in this action.

cleared by CSXT's medical department to return to work. [6]  Prior to receiving medical clearance to return to work Plaintiff, on February 26, 2009, took and passed the lines east territory physical exam with a perfect score of 100%.  When Plaintiff sought reinstatement to his conductor position, Plaintiff's supervisor, Defendant Road Foreman of Engines[7] Thomas Ferris, Jr. ("Ferris"), advised that Plaintiff's extended absence from work required Plaintiff attend remedial training, a five-day conductor refresher training program, at the Railroad Education and Development Institute ("REDI"), in Atlanta, Georgia, and that upon completion of the REDI training Plaintiff would be reinstated as a conductor.  Defendants admit no CSXT written policy required Plaintiff's completion of the REDI training, but that it was a "practice" of CSTX to require employees who return from extended leave to attend such training.  Ferris Dep. Tr. at 44-46.[8]  Meanwhile, Ferris required Plaintiff to participate in "qualifying trips" for which Plaintiff shadowed a train crew to become re-acclimated with the territory to which he would be assigned upon returning to work.  Plaintiff estimates he took 15 qualifying tests, but received no wages for any of them.

Plaintiff originally was scheduled to attend the REDI training on June 15, 2009, but canceled that morning asserting he had been given insufficient time to prepare for the trip to Atlanta for the training, and requesting the training be rescheduled.  Plaintiff was then scheduled to attend the REDI training the week of July 5, 2009.  Although Plaintiff attended, and successfully completed, the REDI training from July 5 to 12,

---

[6] The record is devoid of any reference or discussion as to the nature of the injuries Plaintiff sustained in the August 11, 2007, automobile accident.

[7] Defendants explain that a Road Foreman of Engines supervises transportation employees including locomotive engineers, conductors, and yardmasters for safety rules compliance, locomotive engineer training, and qualifying rides for engineers.  Defendants' Statement of Facts ¶ 17.

[8] References to "Ferris Dep. Tr." are to the page of the transcript of Ferris's deposition, filed as Plaintiff's Exh. B, and Defendants' Exh. C.

2009, upon Plaintiff's return to Buffalo, Ferris advised Plaintiff had to take and pass a written test of the conductor's knowledge of the physical characteristics of the territory over which the conductor would be operating trains, including the signals along a track, locations of sidings, control points ("CPs"), and the branches intersecting throughout the relevant, referred to as the "lines east qualifying test" ("lines east test" or "test"). Because Plaintiff's repeated attempts, beginning in July 2009, to contact Ferris to schedule the lines east test were unsuccessful with Ferris failing to return Plaintiff's calls, Plaintiff contacted Union Representative Richard McVeen ("McVeen"), regarding his inability to return to work and explaining he believed Ferris was discriminating against Plaintiff because was not required to undergo retraining and retesting after a previous extended absence, asserting Ferris had to schedule the lines east test so that Plaintiff could return to work. McVeen contacted the CSXT's Labor Relations Department, advising of Plaintiff's grievances, and Ferris then contacted Plaintiff, advising he was displeased with Plaintiff's assertions of discrimination against Ferris and Plaintiff's involving McVeen and CSXT's labor relations department. Plaintiff was scheduled for the lines east test on November 24, 2009, more than six months after Plaintiff was cleared by CSXT's medical department to return to work, and during which period Plaintiff received no wages or benefits from CSXT.

Plaintiff reported on November 24, 2009, to the CSXT Buffalo Frontier Yard West End RFE Office to take the lines east test which was proctored by Defendant CSXT Road Foreman of Engines Michael Lewandowski ("Lewandowski"), in whose office the test was given ("test room"). One Steven Hrycyszyn ("Hrycyszyn"), another CSXT conductor who is Caucasian, was the only other CSXT employee taking the lines east

test with Plaintiff.  Prior to the start of the lines east test, Lewandowski advised Plaintiff

and Hrycyszyn the test was "closed book" and to silence all cell phones.  Although

Lewandowski was supposed to remain in the exam room throughout the test, he briefly

left the room, leaving CSXT Trainmaster Gary Cochrane ("Cochrane"), in charge of

proctoring the test.  When Lewandowski returned to the exam room Cochrane reported

observing Plaintiff take something from under the desk at which Plaintiff was seated and

hide it, and that Cochrane was concerned Plaintiff may be cheating.  Upon resuming

proctoring the test, Lewandowski saw Plaintiff looking at something under his arm, and

then writing on the exam paper.  Lewandowski approached Plaintiff, observed Plaintiff

copying CPs from his cell phone onto the exam, took the exam away from Plaintiff, and

told Plaintiff to leave, advising he would call later and inform Plaintiff of his status.

Plaintiff did not immediately comply but, rather, asked to take the lines east test again.

Lewandowski made several more requests for Plaintiff to leave, and Plaintiff eventually

acquiesced.  Plaintiff, however, returned 45 minutes later to ask Lewandowski if he

could take the test again, at which time Plaintiff observed Hrycyszyn, still taking the

lines east test, alone in the exam room with no proctor present.  When Lewandowski

returned to the exam room, Plaintiff inquired why Hrycyszyn was permitted to take the

lines east test without supervision.  Plaintiff maintains that Lewandowski responded he

"had to leave to take care of some business."  Brown Dep. Tr. at 53;[9] Hearing Tr. at

28.[10]  With regard to Plaintiff's request to take the lines east test again, Lewandowski

responded he had to await further instructions from his manager as to how to handle the

---

[9] References to "Brown Dep. Tr." are to the page of Brown's deposition, filed as Plaintiff's Exh. A, and Defendants' Exh. A.

[10] References to "Hearing Tr." are to the page of the transcript of Brown's December 22, 2009 Investigative Hearing, filed as Plaintiff's Exh. D, and Defendants' Exh. G.

matter, including whether Plaintiff would be permitted to take the test again because although conductors who fail the lines east test are sometimes permitted to retake the test the following day, Lewandowski was unsure whether Plaintiff, who was accused of cheating, would be permitted to do so.  Lewandowski asserts that after this exchange with Plaintiff, Plaintiff followed Lewandowski down the hall muttering profanity and indicating Plaintiff was being "screwed" and needed his job.

In a letter to Plaintiff dated December 1, 2009, Assistant Division Manager, Albany Division J.D. Lewandowski ("J.D. Lewandowski"), charged Plaintiff with violating CSXT's Operating General Regulation Rule 2 ("Rule GR-2")[11] requiring employees behave in a "civil and courteous manner" and refrain from using "boisterous, profane or vulgar language," entering into altercations, or being "dishonest, insubordinate, immoral [or] quarrelsome. . . ."  ("Charge Letter").[12]  In accordance with the collective bargaining agreement between UTU and CSTX ("CBA"), conductors charged with a rule violation are entitled to a formal investigation hearing, which is a fact-finding proceeding conducted by an impartial hearing officer, with the employee represented by a union official.  Accordingly, on December 22, 2009, a hearing ("Investigative Hearing") was held with Trainmaster Matt Sell presiding ("Hearing Officer"), and Plaintiff represented by UTU Local Chairman Eddie Travis ("Travis").

First to testify at the Investigative Hearing was Lewandowski who testified that the lines east test was given in his office, where Lewandowski worked at the computer on his desk in the front, facing the test takers, *i.e.*, Plaintiff and Hrycyszyn, with Plaintiff seated at a desk approximately 20 feet away.  Hearing Tr. at 17, 34-35, 56-57.  Upon

---

[11] A copy of Rule GR-2 is filed as Defendants' Exh. I.
[12] Defendants' Exh. H.

returning to the exam after using the restroom, Cochrane who, at Lewandowski's request, stepped into the exam room to temporarily proctor the test while Lewandowski used the restroom, advised Lewandowski he observed Plaintiff make a sudden movement with his right hand as though Plaintiff was taking something from underneath the desk, and Cochrane suspected Plaintiff may be cheating.  *Id.* at 40-42.  Based on that information, Lewandowski paid more attention to Plaintiff and observed Plaintiff appeared to be looking at something on his desk that was partially hidden in the crook of Plaintiff's left arm, which was in a curved position on the desk, and then wrote on his test paper.  *Id.* at 34-35, 57.  Lewandowski also observed that Plaintiff appeared to be watching to ensure that Lewandowski was looking at his computer screen before Plaintiff looked at the item that was shielded in the crook of his left arm.  *Id.* at 18, 24-25, 57.  Lewandowski waited until Plaintiff was writing on the test paper to stand up and take 10 to 12 strides to stand 2 to 3 feet from Plaintiff, looked over Plaintiff's shoulder and observed Plaintiff had his cell phone on the desk with either a text message or an e-mail displayed on the cell phone's screen, showing a white background with black writing which appeared to be sequential control points 434, 433, 431, and 429, and which also corresponded to the section of the lines east test Plaintiff was completing at that time.  *Id.* at 21, 34-35, 57-58.  Lewandowski then took Plaintiff's test paper and instructed Plaintiff to leave.  *Id.* at 33, 57-58.  Lewandowski further testified that Plaintiff returned to the test room 45 minutes later inquiring whether he could re-take the test the next day, and Lewandowski told Plaintiff he would have to let Plaintiff know later if that was possible, following which Plaintiff became quarrelsome and directed obscenities toward Lewandowski.  *Id.* at 25-27.  In response to Plaintiff's question, Lewandowski did

not deny that when Plaintiff returned to the exam room, Hyrcyszyn remained alone in the room, with no proctor present, taking the lines east test, explaining he only left the exam room for a few seconds while he helped another employee in the room across the hall, 15 feet away, and that had Plaintiff not been asked to leave the test room after being caught cheating, Plaintiff also would have briefly been in the exam room with no proctor present. *Id.* at 30.

Hrycyszyn testified that on November 24, 2009, Lewandowski "caught" Plaintiff cheating on the lines east test by copying control point information from Plaintiff's cell phone onto the test paper. Hearing Tr. at 46-47. According to Hrycyszyn, who was seated in front of Plaintiff, upon hearing Lewandowski accuse Plaintiff of cheating, Hrycyszyn turned around and observed Plaintiff's cell phone on Plaintiff's desk. *Id.* at 47. Hrycyszyn testified that he then turned back to his own desk to continue taking the test, and that Plaintiff, at Lewandowski's direction, left the exam room, returning a couple of times. *Id.* at 48-49. Hrycyszyn recalled that Lewandowski advised Plaintiff might be permitted to re-take the test the following day. *Id.* Hrycyszyn further testified that he was unable, from his seated position at his desk some 5 to 6 feet from Plaintiff's desk, to see what was displayed on Plaintiff's cell phone. *Id.* at 50-51.

Locomotive engineer James Louis ("Louis"), testified at the Investigative Hearing that on November 24, 2009, he was present in the training room located across the hall from the exam room when he overheard a conversation between Plaintiff and Lewandowski in which Lewandowski advised Plaintiff he needed to study some more before retaking the line east test. Hearing Tr. at 61-62. Louis did not hear Plaintiff utter any profanity. *Id.* at 63.

Following the Investigative Hearing, Plaintiff was found guilty of violating Rule GR-2 and dismissed from his employment with CSTX by Albany Division Manager John Gaylord ("Gaylord") ("Hearing Decision").[13]  On January 27, 2010, the union appealed the Hearing Decision and SCXT denied the appeal on February 2, 2011 ("Appeal Decision").[14]  On May 27, 2011, Plaintiff's appeal was listed for discussion with the UTU's General Committee.  On June 1, 2011, CSXT Manager of Labor Relations R.A. Paszta ("Paszta"), issued a final declination letter regarding Plaintiff's appeal of the Hearing Decision.

On July 12, 2011, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") charging Defendants with race discrimination ("EEOC Charge").  On July 15, 2011, the Hearing Decision appeal was referred to the National Mediation Board.  On August 26, 2011, the EEOC issued Plaintiff a Right to Sue Letter ("Right to Sue").

The Hearing Decision dispute then proceeded to an arbitral tribunal known as a Public Law Board ("PLB").  On November 14, 2011, the PLB issued Award No. 4 ("PLB Award"),[15] denying Plaintiff's appeal and confirming CSXT's decision terminating Plaintiff's employment.

## DISCUSSION

1.    **Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving

---

[13] Defendants' Exh. J.
[14] Defendants' Exh. K.
[15] Defendants' Exh. L.

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the

nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Defendants argue in support of summary judgment that the race-based employment discrimination claims must be dismissed as against CSXT because Plaintiff cannot establish all the requisite elements for his claims of racial discrimination or, alternatively, that Defendants' legitimate, non-discriminatory reason for Plaintiff's termination was mere pretext.  Defendants' Memorandum at 7-14.  Defendants also argue the discrimination claims against Lewandowski and Ferris ("individual Defendants") must be dismissed because individuals are not subject to liability under Title VII, *id.* at 14-15, Plaintiff cannot establish the individual Defendants' requisite personal involvement for liability under § 1981, *id.* at 15 n. 3, individuals are liable as employers under § 296 only if they have sufficient supervisory power over Plaintiff, which neither individual Defendant possessed, *id.* at 15-16, and the tortious interference with a contract claim should be dismissed as against Lewandowski because Plaintiff's employment with CSXT was not pursuant to a contract but, rather, Plaintiff was an at-will employee, *id.* at 16-18.

In opposition to summary judgment, Plaintiff argues he has established a *prima facie* case of race-based retaliation against Defendants, Plaintiff's Memorandum at 9-16, and that evidence in the record supports a finding that the adverse employment

actions to which Plaintiff was subjected occurred under circumstances giving rise to an inference of race-based discrimination. *Id.* at 16-18. Plaintiff also maintains there is an affirmative link causally connecting Defendants Lewandowski and Ferris with the alleged discrimination for liability under § 1981 and § 296, *id.* at 18-20. and that Plaintiff had an implied contract of employment with CSXT with which Lewandowski tortuously interfered. *Id.* at 20-23. In further support of summary judgment, Defendants assert Plaintiff has failed to set forth how any of the alleged mistreatment to which he was subjected is related to his race, or to provide any evidence of racial animus, Defendants' Reply at 1-2, assert that requiring Plaintiff to attend a training program is not an adverse employment action, *id.* at 2-4, and challenges some of Plaintiff's evidence submitted in opposition to summary judgment as hearsay on which the court may not rely. *Id.* at 4-5. Defendants further argue Plaintiff was legitimately required to take the lines east test, *id.* at 6-7, the termination of Plaintiff's employment was without any indicia of racial animus, *id.* at 7-9, and Plaintiff's tortious interference claim fails in the absence of any employment contact governing Plaintiff's employment with CSXT, or any evidence that Lewandowski acted outside the scope of his authority or used any wrongful means to effect Plaintiff's termination. *Id.* at 9-10.

## 2. Employment Discrimination

Plaintiff's employment discrimination claims under Title VII, § 1981 and § 296 are analyzed pursuant to a burden-shifting test established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) ("*McDonnell Douglas*"). *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (discrimination claims under Title VII, § 1981, and § 296). Upon meeting this *de minimus* burden of establishing a *prima facie* case of

employment discrimination, *Brennan v. Metropolitan Opera Association, Inc.*, 192 F.3d 310, 316-17 (2d Cir. 1999) (citing *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)), the burden shifts to Defendant to offer a legitimate, non-discriminatory reason for the challenged actions.  *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once Defendants have asserted a neutral reason for the alleged discriminatory action, "the inference of discrimination raised by the prima facie case then drops out and the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason is merely a pretext for discrimination."  *Brennan*, 192 F.3d at 317 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993)).  *See also Terry*, 336 F.3d at 138 ("'to defeat summary judgment, the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" (citing *Stern v. Trustees of Columbia*,131 F.3d 305, 312 (2d Cir. 1997))).

### A.  *Prima Facie* Case

As stated, in the instant case, Plaintiff alleges Defendants discriminated against Plaintiff because of race, in violation of Title VII, § 1981, and § 296, for which the elements of a *prima facie* case are the same.  *Vivenzio*, 611 F.3d at 106.  Specifically, to establish a *prima facie* case of employment discrimination based on disparate treatment in violation of Title VII, Plaintiff must demonstrate (1) he belonged to a protected class; (2) he was qualified for his position he held; (3) he was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances

giving rise to an inference of discrimination.  *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d

Cir. 2012) (citing *Ruiz v. County of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010)).

The classes protected under Title VII include race, color, religion, sex, and national

origin.  42 U.S.C. § 2000e-2(a)(2).  Here, that Plaintiff, as an African American, belongs

to the protected class of race, establishes the first element of his disparate treatment

claim, a fact Defendants do not dispute.  Nevertheless, Defendants dispute the

remaining three elements of a disparate treatment claim, asserting that Plaintiff, by

cheating on the lines east test, failed to complete such test so as to successfully

demonstrate sufficient familiarity with the territory on which he would be working upon

returning to work, and thus was not qualified for his conductor position, Defendants'

Memorandum at 8-9; that the only adverse employment action Plaintiff suffered was the

termination of his employment, *id.* at 9, but that the circumstances of Plaintiff's

termination do not give rise to an inference of race-based discrimination.  *Id.* at 10-13.

The court thus addresses whether the record establishes at least an issue of fact as to

the second, third, and fourth elements which, if decided in Plaintiff's favor, would show a

*prima facie* case of race-based employment discrimination based on disparate

treatment so as to avoid summary judgment.

### 1.  Qualified for Position

An employment discrimination plaintiff "need not do much to establish his

qualification for the position he holds . . . ."  *Donnelly v. Greenburgh Central School

District No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (citing *Slattery v. Swiss Reinsurance

America Corp.*, 248 F.3d 87, 92 (2d Cir. 2001)).  "'[T]he qualification necessary to shift

the burden to defendant for an explanation of the adverse job action is minimal; plaintiff

must show only that he possesses the basic skills necessary for performance of the job.'" *Id.* (quoting *Slattery*, 248 F.3d at 92).  "Moreover, 'the qualification prong must not be interpreted in such a way as to shift into the plaintiff's *prima facie* case an obligation to anticipate and disprove the employer's proffer of a legitimate, non-discriminatory basis for its decision.'" *Id.* (quoting *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001)).  Significantly, "[i]t is unusual for the plaintiff to fail to meet this burden." *Id.*  A sufficient showing of "qualification" to shift the burden for the alleged adverse employment action to the employer does not require the plaintiff to "'show perfect performance or even average performance.'"  *Gregory*, 243 F.3d at 696 (quoting *Powell v. Syracuse University*, 580 F.2d 1150, 1155 (2d Cir. 1978)).  "Instead, she need only make the 'minimal showing' that '*she possesses the basic skills necessary for the performance of the job.*'"  *Id.* (quoting *Owens v. New York City Housing Authority*, 934 F.2d 405, 409 (2d Cir. 1991) (italics in original; additional quotation and alteration omitted)).  This is because the qualification prong is intended to eliminate the most common, nondiscriminatory reasons for rejecting the plaintiff.  *Id.* (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981); and *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 n. 44 (1977) ("[T]he *McDonnell Douglas* formula . . . demand[s] that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.")).

    If the employer has already hired the employee into the job in question, "the inference of minimal qualification is, of course, easier to draw than in a hiring or

promotion case because, by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified." *Gregory*, 243 F.3d at 696. Furthermore, where, as here, "the employer has retained the plaintiff for a significant period of time and promoted h[im] the strength of the inference that [ ]he possesses the basic skills required for h[is] job is heightened." *Id.* "An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action. But the crucial point remains the same: the qualification prong, as to which the initial burden lies on plaintiff, cannot be transformed into a requirement that the plaintiff anticipate and disprove an employer's explanation that inadequate ability or performance justified the job action at issue." *Id.* at 696-97. Nevertheless, "there will also be circumstances in which a plaintiff's performance is so manifestly poor as to render her unqualified for continued employment and thereby defeat her *prima facie* case." *Id.* at 697 n. 7 (citing *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997) (finding plaintiff failed to establish *prima facie* case for employment discrimination where, after probation period, employer rated plaintiff's work unsatisfactory on a majority of criteria, most of which plaintiff failed to contest)).

In the instant case, Defendants argue Plaintiff was not qualified for the conductor position because he failed to successfully complete the lines east test, a prerequisite to returning to work after his extended medical leave. Defendants' Memorandum at 8-9. In opposition to summary judgment, Plaintiff asserts that his continued qualification for the conductor position is supported by the undisputed facts that he was qualified for the conductor position which he held for approximately three years prior to his medical

leave following the automobile accident in August 2007, scored a perfect 100% on a lines east physical characteristics test he took on February 26, 2009, was medically cleared to return to his conductor job by both Plaintiff's personal physician as well as be CSXT's medical staff, and successfully completed REDI training in July 2009, prior to his dismissal.  Plaintiff's Memorandum at 10.  Defendants do not argue in further support of summary judgment on this element of Plaintiff's employment discrimination claims.

   *Deebs v. Alstom Transp. Inc.*, 550 F.Supp.2d 385, (W.D.N.Y. 2008), on which Defendants' rely, Defendants' Memorandum at 8, in support of their argument that Plaintiff's failure to pass the lines east test establishes Plaintiff was not qualified for the conductor job is inapposite.  In particular, in *Deebs*, the plaintiff alleged age-based employment discrimination following the termination of his employment as part of the employer's reduction in force.  *Deebs*, 550 F.Supp.2d at 388-89.  Summary judgment was granted in favor of the defendant employer who had established that the plaintiff's termination from his technician position was attributed to the employer's reduction in force as well as the plaintiff's own poor work performance, both valid reasons for terminating an employee.  *Id.* at 392.  Significantly, the plaintiff's poor performance was supported by the plaintiff's failure to ever pass an electrical skills test which the plaintiff conceded was a requirement of all technicians.  *Id.*

   In contrast, in the instant case, there are significant issues of fact as to why Defendants required Plaintiff to sit for the lines east test, most obvious Defendants' own inability to articulate why Plaintiff was chosen to take the lines east test when other employees returning from an extended absence were not.  That Plaintiff was not

permitted, following allegations of cheating, to finish the lines east test, does not necessarily require a finding that Plaintiff could not have satisfactorily completed the lines east test without the aid of whatever information Lewandowski alleges Plaintiff was copying from his cell phone.  In fact, Defendants concede that the termination of Plaintiff's employment was not based on Plaintiff's failing any training or tests. Defendants' Reply at 7.  Further, the record is devoid of any indication as to what portion of the lines east test Plaintiff had completed when Lewandowski directed Plaintiff to leave the room, as well as whether the portion Plaintiff did complete was ever graded and, if so, whether Plaintiff's performance on the incompleted test would have indicated that Plaintiff likely would have passed the test had he been allowed to complete it, albeit unaided by reference to outside material as expected during a "closed book" test.

The evidence in the record thus establishes the existence of a genuine issue of material fact on which a reasonable jury could conclude that Plaintiff was qualified for the conductor position from which he was terminated, which would satisfy the first element of a *prima facie* disparate treatment employment discrimination claim.

## 2.  Adverse Employment Action

With regard to the third element, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment."  *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citing cases).  For purposes of Title VII, an adverse employment action is "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Id.* (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). "'A materially adverse change might be indicated by a termination of employment, a

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Id.* (ellipses in original). Accordingly, Plaintiff's termination of employment constitutes an adverse employment action, the third element, *see Galabya*, 202 F.3d at 640, and Defendants have conceded this point. Defendants' Memorandum at 9.

Defendants argue in support of summary judgment that other than the termination of Plaintiff's employment, Plaintiff did not suffer an adverse employment action because he was given the same training provided to more than one hundred other employees in the Albany and Great Lakes Divisions after returning from absences between 2008 and 2011. Defendant's Memorandum at 9. According to Defendants, requiring a conductor to undergo training and demonstrate sufficient knowledge of the geographic markers on the lines on which they work after being off work for more than 18 months cannot be construed as an adverse employment action. *Id.* Plaintiff, however, also argues that Defendants placed "various barriers in his path" to returning to his conductor position, including attending the REDI training which Plaintiff maintains is generally required only for new hires or newly promoted employees, Plaintiff's Memorandum at 12-14, completing qualifying trips, *id.* at 14, and the lines east test for which Plaintiff needed the assistance of the union to get scheduled, albeit for November 2009, more than six months after Plaintiff was medically cleared to return to work. *Id.* According to Plaintiff, the barriers served only to delay Plaintiff's return to duty and prevented Plaintiff from working any assignments resulting in Plaintiff not being paid for any work. *Id.* In further support of summary judgment, Defendants reiterate their

argument that required training or testing does not constitute an adverse employment action.  Defendants' Reply at 2-7.  The record, however, establishes genuine issues of material fact as to whether Plaintiff was subjected to an adverse employment action other than the termination of his employment.

Significantly, while undergoing the various training and testing and participating in qualifying trips following receipt of his medical clearance in May 2009, Plaintiff received no pay or wages, the loss of which could be construed as an adverse employment action given Defendants' inability to specifically explain the criteria used to determine which employees who return from an extended leave will be required to undergo such training and testing.  Defendants have not provided a completely satisfactory answer as to why Plaintiff was required to take the lines east test but have only admitted there is no written policy requiring such test, and that the determination is made on a case-by-case basis by each employee's supervisor, without any explanation as to what criteria are considered by the supervisor in determining whether to require an employee to take the test.  Although Ferris testified at his deposition that all CSXT conductors and engineers would be required, upon returning from an extended leave of more than one year, to undergo REDI training and take a physical characteristics test, Ferris Dep. Tr. at 41-42, Defendants have submitted a spreadsheet listing all "Train and Engine employees in the Albany and Great Lakes Divisions [of CSXT] who returned to work after being out of service for an extended period for the years 2008 through 2011." November 29, 2013 Letter from Susan C. Roney, Esq. to Steven M. Cohen, Esq.[16]  The attached spreadsheet includes 22 conductors and engineers from the Albany Division who were on leave for more than one year, including Plaintiff.  Of those 22 conductors

---

[16] Defendants' Reply Exh. C.

and engineers, 17 were returned to their positions following the extended leave without undergoing REDI training.  Of the remaining 113 CSXT employees listed on the spreadsheet whose job title is either not provided, or who are identified as working some position other than conductor or engineer, upon returning from absences of more than one year, 102 attended REDI training, and 11 did not.  Further, several of the 102 who attended REDI training completed the training prior to returning to the stated "return date" with no explanation given as to why some employees who were absent on extended leave were permitted to attend such training while still on leave.  Defendants also have not asserted that the nature of Plaintiff's injuries sustained in the August 11, 2007 automobile accident provided any basis for requiring Plaintiff to attend REDI training and pass the lines east test.  Nor, significantly, have Defendants asserted that the determination that Plaintiff should attend the REDI training or take the lines east test was attributed to Plaintiff's temporarily suspension from his conductor job from October 2005, following an accident for which Plaintiff was determined responsible, until March 2006 when Plaintiff received a leniency reinstatement.

Given that Plaintiff was required to attend training, testing, and take qualifying trips for six months, during which time he was unpaid, and in the absence of satisfactory explanation of the criteria by which such decision was made, there exists a genuine issue of material fact as to whether these requirements constituted an adverse employment action.  Nevertheless, although the record establishes issues of fact regarding the second and third elements for an employment discrimination claim of disparate treatment based on race, the fourth element, that the adverse employment

action occurred under circumstances giving rise to an inference of discrimination, on the instant record, is not established.

### 3.  Circumstances Giving Rise to an Inference of Discrimination

Defendants argue in support of summary judgment that Plaintiff has not identified any comments or actions by Ferris or Lewandowski, or even Division Manager Gaylord who issued the termination letter, suggesting that any adverse employment action against Plaintiff was based on Plaintiff's race.  Defendants' Memorandum at 10.  Nor, according to Defendants, is there any circumstantial evidence suggesting Plaintiff was subjected to disparate treatment based on his race such that Plaintiff relies only on mere speculation which is insufficient to establish the fourth element of a *prima facie* case.  *Id.* at 10-13.  Plaintiff admits there is no direct evidence of race-based employment discrimination, yet asserts the record contains sufficient circumstantial evidence of racial discrimination to avoid summary judgment.  Plaintiff's Memorandum at 14-15.  In further support of summary judgment, Defendants assert that although direct evidence is not necessary to support race-based employment discrimination claim, there must be some evidence that the actions Plaintiff challenges were influenced by racial animus, which Plaintiff has failed to demonstrate.  Defendants' Reply at 2.

In the absence of any direct evidence of employment discrimination based on disparate treatment, to establish the fourth prong of a *prima facie* case of disparate treatment, *i.e.*, a causal relationship between the plaintiff's membership in a protected class and the adverse employment action, the plaintiff must show the adverse employment action occurred under circumstances giving rise to an inference of discrimination, which is generally accomplished by "showing that the employer treated

plaintiff 'less favorably than a similarly situated employee outside the protected group.'"

*Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).  "A plaintiff relying on

disparate treatment evidence 'must show she was similarly situated in all material

respects to the individuals with whom she seeks to compare herself.'"  *Id.* (quoting

*Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).  Although whether two

employees are similarly situated generally presents a question of fact for the jury,

*Graham*, 230 F.3d at 39 (citing cases), "[t]his rule is not absolute, [ ], and a court can

properly grant summary judgment where it is clear that no reasonable jury could find the

similarly situated prong met."  *Harlen Associates v. Incorporated Village of Mineola*, 273

F.3d 494, 499 n. 2 (2d Cir. 2001) (citing *Cruz v. Coach Stores*, 202 F.3d 560, 568 (2d

Cir. 2000)).  "In this analysis, there must be an 'objectively identifiable basis for

comparability' between the plaintiff and the comparator employee, which includes an

assessment of 'whether the conduct for which the employer imposed discipline was of

comparable seriousness.'"  *Zuk v. Onondaga County*, 471 Fed.Appx. 70, 71 (2d Cir.

June 18, 2012) (quoting *Graham*, 230 F.3d at 40).

In the instant case, not only has Plaintiff failed to point to any objectively

identifiable, *i.e.*, 'smoking gun' evidence as an identifiable basis for comparability

between himself and any comparator employee, but no such basis for comparability is

evident in the record.  Particularly, the race of none of the employees listed on the

spreadsheet Defendants submitted in support of summary judgment to establish that

other employees were required to attend REDI training before being returned to their

respective jobs following an extended medical leave, *i.e.*, Defendants' Reply Exh. C,  is

identified.  As such, it is not possible to determine from the spreadsheet whether the

selection of African-American employees for REDI training was disproportionate to the selection of non-African-American employees. Similarly, although Plaintiff maintains eleven Caucasian employees with less seniority than Plaintiff were furloughed for 15 months but were not required to attend REDI training upon returning to work, Plaintiff's Memorandum at 16-17, there is no indication as to the positions held by the furloughed employees such that it is not possible to determine whether the furloughed employees were similarly situated to Plaintiff in all other aspects of his employment for a fair comparison. *Mandell*, 316 F.3d at 379. Further, insofar as Plaintiff asserts that two other Caucasian CSXT employees, conductor Eddie Travis ("Travis"), and Shawn Blake ("Shawn Blake"), accused, respectively, of having committed "major offenses," including running a signal, and failing a drug and alcohol test, were not terminated for such offenses, Plaintiff's Memorandum at 17, as Defendants assert, Defendants' Reply at 8, the full circumstances of Travis and Blake's transgressions are not in the record.[17] As such, it is not possible to draw the requisite comparison between Plaintiff and these two individuals necessary to support an inference of discrimination. Further, although Plaintiff, in attempting to distinguish between the circumstances under which Caucasian conductor Danny Blake ("Danny Blake") was terminated for cheating on a written test, relies on the fact that Danny Blake admitted he was cheating, and the test proctor confiscated a "cheat sheet" containing answers to the test from Danny Blake, asserting Lewandowski did not similarly confiscate any physical evidence from Plaintiff who never admitted cheating on the lines east test, Plaintiff's Memorandum at 17, Lewandowski did not rely on what appeared on the screen of Plaintiff's cell phone in drawing the

---

[17] A plain reading of the relevant portion of the transcript of Lewandowski's deposition ("Lewandowski Dep. Tr."), filed as Plaintiff's Exh. C, fails to establish whether either Travis or Blake was actually found guilty of such charges. *See* Lewandowski Dep. Tr. at 55-58.

conclusion that Plaintiff was cheating on the lines east test but, rather, on his observation that Plaintiff looked at his cell phone and then wrote down the numbers for various control points.  Lewandowski Dep. Tr. at 58-60.  As such, Lewandowski had no need to confiscate Plaintiff's cell phone.  Furthermore, insofar as Plaintiff maintains Lewandowski, from his position seated in front of the exam room 15-20 feet from Plaintiff, would have been unable to view either what was displayed on Plaintiff's cell phone or what Plaintiff was writing on his test, Plaintiff's Memorandum at 12 (citing testimony of Hrycyszyn, Hearing Tr. at 51-52), Lewandowski explained that when he observed Plaintiff look down between his arms on the desk at which Plaintiff was seated, Lewandowski walked over to Plaintiff's desk and observed Plaintiff copying control point numbers from Plaintiff's cell phone.  Hearing Tr. at 17-18.

Accordingly, the fourth element, and thus a *prima facie* case, for a claim of race-based disparate treatment employment discrimination is not established.  Because Plaintiff has failed to establish a *prima facie* case of disparate treatment based on race, the burden does not shift to Defendants to offer a legitimate, non-discriminatory reason for the challenged actions.  Summary judgment on Plaintiff's disparate treatment based on race claims under Title VII, § 1981, and § 296 should be GRANTED.

## B.  Legitimate, Non-Discriminatory Reasons

Should the District Judge disagree with the undersigned's finding that Plaintiff has failed to establish a *prima facie* case of employment discrimination, the court addresses whether Defendants have articulated legitimate, non-discriminatory reasons for the asserted adverse employment actions.  Defendants maintain that the cheating and insubordination allegations against Plaintiff justified the termination of his

employment, and that CSXT acted within its discretion in requiring Plaintiff to attend the REDI training and take the lines east test.  Defendants' Memorandum at 13-14.  In opposition to summary judgment, Plaintiff argues only that CSXT's decision to terminate his employment was not based on substantiated evidence.  Plaintiff's Memorandum at 17.

Defendants have submitted substantial evidence establishing Plaintiff's termination occurred after an evidentiary hearing at which Plaintiff, represented by UTU Chairman Travis, was permitted to submit evidence, call witnesses to testify on his behalf, and the cross-examine Defendants' witnesses.  Furthermore, the Appeal Decision references other PLB Awards in which CSXT employees have been terminated for cheating on tests.  Appeal Decision at 3.

Defendants have thus articulated a legitimate, non-discriminatory reason for Plaintiff's discharge.  Furthermore, Plaintiff has not challenged that CSXT acted beyond its discretion in requiring Plaintiff to attend REDI training and sit for the lines east test.  Accordingly, Defendants have articulated legitimate, non-discriminatory reasons for the challenged adverse employment actions, shifting the burden back to Plaintiff to establish such reasons were mere pretext to unlawful race-based employment discrimination.

### C.    Pretext to Discrimination

Where the defendant articulates a nondiscriminatory reason for its challenged actions, "the presumption of discrimination is rebutted and it 'simply drops out of the picture.'"  *Connell v. Consolidated Edison Co. of New York, Inc.*, 109 F.Supp.2d 202, 207 (S.D.N.Y. 2000) (quoting *St. Mary's Honor Center*, 509 U.S. at 510-11).  Then the

plaintiff must show, "without the benefit of any presumptions, that more likely than not the employer's decision was motivated at least in part by a discriminatory reason." *Id.* (citing *Grady v. Affiliated Center, Inc.*, 130 F.3d 553, 560 (2d Cir. 1997)).  Plaintiff may do this by relying on the evidence already presented to establish a *prima facie* case, as well as any additional evidence.  *Id.*  Further, "because the fourth prong of the prima facie case in this context is proof of circumstances giving rise to an inference of discrimination, as a practical matter, there is little difference between the evidence that a plaintiff would present in proving just the prima facie case and pretext in proving the 'ultimate fact of discrimination.'"  *Id.* at 208 n. 5.

In the instant case, although not addressed by either party, Plaintiff's failure to present evidence necessary to establish that the alleged adverse employment actions occurred under circumstances giving rise to an inference of discrimination also dooms any attempt to establish that Defendants' articulated legitimate, non-discriminatory reasons were mere pretext to discrimination.

Accordingly, summary judgment should be GRANTED in favor of CSXT on Plaintiff's race-based disparate treatment claims under Title VII, § 1981, and § 296.

### D.  Individual Liability

Although the undersigned recommends granting summary judgment in favor of Defendant CSXT on the race-based disparate treatment claims under Title VII, § 1981, and § 296, the court also addresses whether summary judgment should be granted as against the individual Defendants, Ferris and Lewandowski, on the same claims.

### 1.  Title VII

Regardless of whether the District Judge agrees with the recommendation that summary judgment on Plaintiff's Title VII claim be granted in favor of CSXT, as Defendants argue, Defendants' Memorandum at 14-15, Title VII does not provide for liability against individuals but, rather, only against the employer.  *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) (holding "individuals may not be held personally liable under Title VII . . . .")).  Plaintiff has not argued otherwise, *see* Plaintiff's Memorandum, *passim*, a failure noted by Defendants.  Defendants' Reply at 8 n. 7.  Accordingly, no individual liability claim lies against either Ferris or Lewandowski under Title VII and Defendants' Motion should be GRANTED insofar as to Plaintiff asserts his Title VII claim against Ferris and Lewandowski.

### 2.  § 1981

Defendants argue, Defendants' Memorandum at 15 n. 3, that Plaintiff cannot establish liability under § 1981 against Defendant Ferris because Ferris was not involved with the cheating incident leading to Plaintiff's termination.  In opposition, Plaintiff argues both Ferris and Lewandowski engaged in conduct causally connected to the adverse employment actions.  Plaintiff's Memorandum at 18-19.  In further support of summary judgment, Defendants note that any claim of § 1981 liability against Ferris and Lewandowski fails for the same reasons the employment discrimination claims fail against CSXT.  Defendants' Reply at 8 n. 7.

The Second Circuit has held that contrary to employment discrimination claims brought under Title VII which may be brought only against the employer, "individuals

may be held liable under § 1981." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74-75 (2d Cir. 2000). *See also Wong v. Mangone*, 450 Fed.Appx. 27, 30 (2d Cir. 2011) (interpreting § 1981 as providing a remedy "against private actors who intentionally discriminate on the basis of race."). To state a claim for individual liability under § 1981, however, a plaintiff must allege "'some affirmative link to causally connect the actor with the discriminatory action.'" *Id.* (quoting *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991); and citing *Hicks v. IBM*, 44 F.Supp.2d 593, 597 (S.D.N.Y. 1999)). "Personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004). Nevertheless, "individual liability under § 1981 is not without limits. In each of the cases that have allowed individual liability [under § 1981], the individuals have been supervisors who were personally involved in the discriminatory activity." *Hicks*, 44 F.Supp.2d at 597 (bracketed material added).

In the instant case, Plaintiff alleges both Ferris and Lewandowski engaged in conduct causally related to the adverse employment actions to which Plaintiff was subjected so as to be subject to liability under § 1981. Plaintiff's Memorandum at 18-19. Plaintiff specifically alleges that although Plaintiff had worked the lines east territory for three years prior to his medical leave, and, on February 26, 2009, took and passed the territory physical exam with a perfect score, Ferris required Plaintiff to undergo REDI training, complete qualifying trips, and take the lines east test before being permitted to

return to his conductor position.  *Id.* at 18.  Because the REDI training and lines east test were not required by CSXT policy, nor required of all employees returning from "extended leave," a term for which there is no written definition, the requisite link exists between Ferris's actions and the obstacles placed in Plaintiff's way in attempting to return to work following his medical leave during which time Plaintiff was not paid. Accordingly, Ferris is subject to liability under § 1981.

With regard to Lewandowski, because it was Lewandowski who accused Plaintiff of cheating during the lines east test Lewandowski proctored, the requisite causal connection exists to subject Lewandowski to liability under § 1981.  Thus, should the District Judge find, contrary to the undersigned, that a material issue of fact regarding the fourth factor, the presence of discriminatory animus, for Plaintiff's Title VII claim against CSXT, Defendants Ferris and Lewandowski's summary judgment motion as to this claim should be DENIED.

### 3.  N.Y. Exec. Law § 296

Plaintiff alleges employment discrimination against Defendants Ferris and Lewandsowski under N.Y. Exec. Law § 296(1) ("§ 296(1)"), Amended Complaint ¶ 118, and (6) ("§ 296(6)").  *Id.* ¶¶ 120 (Ferris) and 122 (Lewandowski).  Preliminarily, insofar as liability under § 296 is analyzed pursuant to the same criteria as liability under Title VII and § 1981, these claims fail against the individual defendants for the same reasons they fail against CSXT.  The claims are, however, addressed in the alternative should the district judge disagree with the initial recommendation that summary judgment be granted on Plaintiff's claims under § 296.

With regard to § 296(1), Defendants argue in support of summary judgment that neither Ferris nor Lewandowski possessed the requisite ownership interest or authority to hire or fire an employee as required for liability under § 296(1).  Defendants' Memorandum at 15.  In opposition to summary judgment, Plaintiff maintains that the record establishes the individual defendants were supervisors who sufficiently participated in the conduct giving rise to the alleged discrimination so as to be considered "employers" for purposes of § 296(1).  Plaintiff's Memorandum at 19-20. In further support of summary judgment, Defendants note that "[t]o the extent any claim of individual liability under . . . New York Executive Law for aiding and abetting can legally be made, these claims fail for the same reasons the Title VII claim against CSXT fail[s]."  Defendants' Reply at 8 n. 7.

Liability against individual employees under § 296(1) requires that the individuals have either an ownership interest or the authority to do more than carry out personnel decisions made by others.  *Patrowich v. Chemical Bank*, 473 N.E.2d 11, 12 (N.Y. 1984). *See Malena v. Victoria's Secret Direct, LLC*, 886 F.Supp.2d 349, 365-66 (S.D.N.Y. 2012) (individual liability under § 296(1) is "'limited to individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees.'" (quoting *Banks v. Corr. Servs. Corp.*, 475 F.Supp.2d 189, 199 (E.D.N.Y. 2007))).  In the instant case Defendants assert, Defendants' Memorandum at 16, that Ferris and Lewandowski "are Road Foremen of Engines, who supervise locomotive engineers. Their duties also include the supervision of transportation employees, conductors, engineers, yardmasters, 'as far as safety rules compliance,' and for locomotive engineer training, and qualifying rides for the engineers."  Defendants' Statement of Facts ¶ 17

(quoting Lewandowski Dep. Tr. at 8-9; Ferris Dep. Tr. at 24).  This is consistent with the

fact that following the Investigative Hearing on the charges that Plaintiff was cheating

and insubordinate, Plaintiff's employment was terminated by Albany Division Manager

Gaylord.  Hearing Decision.  Plaintiff has failed to point to any evidence supporting his

position that either Ferris or Lewandowski possessed authority to hire or fire employees

and, as such, has failed to meet his burden to avoid summary judgment on this claim.

Summary judgment should be GRANTED in favor of Defendants on Plaintiffs' §

296(1) claim.

Defendants also argue that unless the employer is liable for employment

discrimination, an individual employee may not be liable for aiding and abetting such

discrimination under § 296(6).  Defendants' Memorandum at 14-15.  In opposition,

Plaintiff maintains that even without qualifying as supervisors, the individual Defendants

are liable under § 296(6) for aiding and abetting in employment discrimination.  *Id*.  In

further support of summary judgment, Defendants make the same argument made with

regard to liability under § 296(1), *i.e*., "[t]o the extent any claim of individual liability

under . . . New York Executive Law for aiding and abetting can legally be made, these

claims fail for the same reasons the Title VII claim against CSXT fail[s]."  Defendants'

Reply at 8 n. 7.

An employee without authority to hire or fire an employee may be liable for

employment discrimination under N.Y. Exec. Law § 296(6), if the employee aids or

abets an employer's discriminatory practices.  *See Feingold v. New York*, 366 F.3d 138,

157-58 (2d Cir. 2004).  An aider or abettor generally is one "who actually participates in

the conduct giving rise to a discrimination claim."  *Tomka*, 66 F.3d at 1317 (internal

citations omitted).   As such, assuming, *arguendo*, the District Judge agrees with the
recommendation that summary judgment on Plaintiff's state law claim under § 296(6) be
granted in favor of Defendant CSXT, then summary judgment must also be granted in
favor of Defendants Ferry and Lewandowski for there can be no liability for aiding and
abetting discriminatory practices unless the plaintiff first establishes the liability of his
employer. *Pellegrini v. Sovereign Hotels, Inc.*, 740 F.Supp.2d 344, 356 (N.D.N.Y. 2010)
(absent § 296 liability against the employer/principal, there can be no individual liability
against any aider or abettor (citing *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415,
417-18 (2d Dep't 1998))).   Accordingly, whether Defendants Ferris or Lewandowski can
be individually liable to Plaintiff is addressed only in the alternative should the District
Judge disagree with the recommendation that Plaintiff has failed to establish an issue of
fact for a *prima facie* case of disparate treatment employment discrimination based on
race against CSXT.

As discussed in connection in connection with whether Plaintiff has demonstrated
a *prima facie* case of employment discrimination, Discussion, *supra*, at 19-24, the
record contains sufficient evidence establishing genuine issues of material fact
regarding the criteria on which Ferris relied in requiring Plaintiff to attend the REDI
training and sit for the lines east test.  If no such criteria exist, then it is entirely possible
a reasonable jury could conclude that Ferris relied on impermissible grounds in directing
Plaintiff to complete the REDI training and lines east test, thereby actively participating
in the conduct which gave rise to the alleged discrimination against Plaintiff.  No such
liability, however, would lie against Lewandowski because there is no evidence in the
record attributing Lewandowski's determination that Plaintiff was cheating on the lines

east test and subsequent insubordination, a determination that was later upheld

following an Investigative Hearing at which Plaintiff was provided with union

representation and allowed to present evidence and cross-examine the witnesses

against him, was intended to aid and abet any discrimination by CSXT.  In such

circumstances, Defendants' motion, insofar as Plaintiff alleges employment

discrimination in violation of § 296(6), should be DENIED as to Ferris, but GRANTED as

to Lewandowski.

### 3.    Tortious Interference with a Contract

Plaintiff alleges Lewandowski tortiously interfered with the employment

relationship between Plaintiff and CSXT which constituted an implied employment

contract.  Amended Complaint ¶¶ 109-15.  Defendants argue in support of summary

judgment that in the absence of a written employment agreement delineating the

duration of the employment relationship, Plaintiff is an at-will employee without a valid

contract claim except in limited situations inapplicable here.[18]  Defendants'

Memorandum at 16-18.  In opposition to summary judgment, Plaintiff argues the

circumstances under which Lewandowski allegedly falsely accused Plaintiff of cheating

on the lines east test, using profanity and being discourteous to another employee

establish Lewandowski interfered with Plaintiff's implied contract of employment with

CSXT.  Plaintiff's Memorandum at 20-23.  In further support of summary judgment

Defendants assert that Plaintiff, in opposing summary judgment on this claim, relies

---

[18] Insofar as Plaintiff may be relying on the CBA between CSXT and UTU, as the contract with which
Lewandowski allegedly interfered, Defendants assert, Defendants' Memorandum at 17 n. 4, and Plaintiff
does not dispute, the claim would require interpretation of the CBA and, as such, would be preempted by
the Railway Labor Act, 45 U.S.C. § 151 *et seq. Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261
(1994) (holding employee's claim under state law preempted by Railway Labor Act "where the resolution
of a state-law claim depends on an interpretation of the CBA").

solely on his belief that Lewandowski lied during the investigative hearing to get Plaintiff

fired.  Defendants' Reply at 9-10.

> "Under New York law, the elements of a tortious interference claim are: (a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff."

*Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001) (quoting *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996)).

In the instant case, Plaintiff, as an at-will employee of CSXT, did not have an

employment contract with CSXT and "New York has adamantly refused to allow

employees 'to evade the employment at-will rule and relationship by recasting his cause

of action in the garb of tortious interference with his employment.'"  *Albert*, 239 F.3d at

274 (quoting *Ingle v. Glamore Motor Sales, Inc.*, 535 N.E.2d 1311, 1313 (N.Y. 1989)).

"An at-will employee may maintain a tortious interference claim, however, in 'certain

limited situations.'"  *Id.* (quoting *Finley*, 79 F.3d at 1295).  To do so, Plaintiff "must

establish that a 'third party used wrongful means to effect the termination such as fraud,

misrepresentation, or threats, that the means used violated a duty owed by the

defendant to the plaintiff, or that the defendant acted with malice.'"  *Id.* (quoting *Cohen

v. Davis*, 926 F.Supp. 399, 403 (S.D.N.Y. 1996) (citing New York cases)).

In the instant case, no tortious interference claim can lie against CSXT who

would be the sole party to the alleged employment contract.  *Albert*, 239 F.3d at 274.

Similarly, Lewandowski, as an employee of CSXT, generally would not be considered a

third party with respect to the terminated employment relationship between Plaintiff and

CSXT unless it is shown that Lewandowski "'acted outside the scope of [his] authority.'"

*Id.* at 275 (quoting *Kosson v. Algaze*, 610 N.Y.S. 2d 277, 228 (1st Dep't 1994)); *see*

*Finley*, 79 F.3d at 1295 ("to show that a defendant-employee is a 'third party,' a plaintiff must show that the defendant-employee has exceeded the bounds of his or her authority.").  The record, however, fails to show any evidence that Lewandowski acted outside the scope of his authority when he proctored the lines east test, accused Plaintiff of cheating on the lines east test, or testified at the Investigative Hearing.  Significantly, Plaintiff points to no evidence suggesting any possibility to the contrary and, as such, has not met this burden of proof to avoid summary judgment on this claim.

Summary judgment on Plaintiff's tortious interference claim should thus be GRANTED in favor of Defendants.

## CONCLUSION

Based on the foregoing, Defendants' Motion (Doc. No. 43) should be GRANTED; the Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        April 20, 2015
             Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      April 20, 2015
                  Buffalo, New York